## GEORGE COOK v. STATE.

No. A-1946.   Opinion Filed February 24, 1914.

(138 Pac. 823.)

EVIDENCE—Conduct as to Witness. The wife of the prosecuting witness refused to appear upon a subpoena, and was brought into court upon an order of attachment. She did not testify that she was present when the alleged sale of whisky was made, but testified that the defendant sent a party to her, and that the defendant told her, if she would stay hid and not appear against him, he would give her some money, and that he gave her money,.but that it was before this case was started. **Held,** incompetent and prejudicial, in that no connection with the case on trial was shown.

*Error from County Court, Kay County;*
*Claude Duval, Judge.*

George Cook was convicted of a violation of the prohibition law, and brings error. Reversed.

*Louthan & Burns,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J.   The plaintiff in error was indicted in the district court of Kay county on September 28, 1911, charged with having unlawfully sold whisky to one G. W. Stansberry. The indictment was duly transferred to the county court.   On the 19th day of November, 1912, a trial was had before a jury, which returned a verdict of guilty, and fixed the punishment by fine alone.   Thereupon the court, with proper instructions as to the law prescribing the punishment, directed the jury to reconsider their verdict.   The jury returned another informal verdict, and the court again directed them to reconsider it, and the jury returned a verdict of guilty, leaving the punishment to be fixed by the court.   Motion for new trial was duly filed and overruled. On the 25th day of November the court pronounced judgment, and sentenced the defendant to be confined in the county jail for 60 days and pay a fine of $150.   To reverse the judgment an appeal was perfected.

Several assignments of error are to the effect that the evidence is insufficient to support the verdict.

G. W. Stansberry testified that on the 3d day of September he was conducting the American House in Ponca City, and on that day he bought two half pints of whisky from the defendant in the kitchen of the American House, paying him a dollar therefor.   On cross-examination he stated that he was convicted of the unlawful possession of whisky in the American House; that he moved out of the American House some time in September. Proper predicate was laid for introducing statements made by the prosecuting witness that the defendant had been instrumental in putting him out of the American House, "and that he was going to get even with him when the grand jury set."

Cora Clemens testified that she was the daughter of G. W. Stansberry, and that the defendant, on September 3d, brought two half pints of whisky into the kitchen at the American House and sold them to her father.   On cross-examination she said that she remembered the date because it was the day that her father went to Newkirk to make bond in his bootlegging case.   She exhibited a great degree of prejudice against the defendant.   There-

upon, the county attorney announcing that an attachment had issued for the wife of the complaining witness, upon his request the court took a recess for twenty minutes, and a further recess until 1:30 p. m., at which time, said attachment not having been returned, the court ordered the trial to proceed, and stated that: "In the event that the witness appears, the county attorney will be permitted to reopen the case for the purpose of offering the testimony of the absent witness."

The defendant as a witness in his own behalf denied that on September 3d, or at any other time, he sold G. W. Stansberry any whisky. On cross-examination he was asked several improper questions, objections to which were sustained by the court.

Levi Temple testified that he had a conversation with the prosecuting witness in Ponca City about the 1st of September, and he asked him if he had ever bought any whisky of the defendant, and he told him he had not, and Stansberry then said Cook had something to do with making him get out of the American House, and he would get even with him when the grand jury set.

D. Lumley testified that he was present and heard G. W. Stansberry say to Levi Temple that he thought Cook had someing to do with trying to get him out of the American House, and he would get even with Cook when the grand jury set, and that Cook would not make anything by it if he did have him put out.

John Hight testified that he was deputy sheriff, and raided the American House about September 1st, and found intoxicating liquors there in the possession of the prosecuting witness.

Thereupon, over the objection of the defendant, the court permitted the county attorney to reopen the case, for the purpose of offering the testimony of Mrs. G. W. Stansberry. She stated that the defendant sent a party to her. Objection being sustained, she further stated:

"Well, if you want me to tell, of course he came to me and had a few words with me, and got me not to appear against him." (The defendant moves to strike out the answer of the witness.)

"The Court: Tell what the words were. A. He came to me and we had some talk, and told me if I would stay hid and not appear against him he would give me some money, which he did. I got a certain party to stay there."

She further stated that she did not remember what time it was; that she never paid any attention to it, and could not say, except "that it was before this case was started."

The defendant recalled, testified that the only conversation he ever had with Mrs. Stansberry was at a time she stopped him on the street, and said, "Mr. Cook, my old man forced me to come up before the grand jury, and I am hard up for money, and if you will come across I will lay down," and that he said to her, "I never had been held up without a gun, and I don't propose to be held up now," and that he did not pay her anything.

The competent testimony tending to prove the defendant guilty of the offense charged is very unsatisfactory, as the witnesses for the state were apparently actuated by prejudice and desire for revenge, yet we are constrained to hold that it was of such a character as to raise a question of fact, and that the verdict of guilty ought not to be set aside because contrary to or against the weight of the evidence; but, while we cannot say that the evidence is not sufficient to sustain a conviction, it is by no means certain that the jury, in reaching that conclusion, may not have been improperly influenced to the prejudice of the defendant by incompetent and improper evidence admitted against him. The improbable fact, testified to by the prosecuting witness, and corroborated by his daughter, that the defendant carried a pint of whisky into the bootlegging joint of the prosecuting witness, and there sold it to him, was sought to be bolstered up with the testimony of the wife of the prosecuting witness. She did not testify that she was present when the alleged transaction took place, but stated that the defendant sent a party to her, and that the defendant "got me not to appear against him," and that she "got a certain party to stay there," and that the defendant told her if she would stay hid and not appear against him, he would give her some money, and that he gave her money, but that

"it was before this case was started." We think that this testimony was incompetent and prejudicial because the language and conduct imputed to the defendant cannot be assumed to be in connection with the case on trial. It must clearly so appear to be competent. And, considering that this witness refused to appear upon a subpoena and was brought into court upon an order of attachment, and that her testimony is strongly tainted with the presumption that it was prompted by revenge, the logical inference is that it was a part of the plan of the Stansberrys to prejudice the defendant.

There was a direct conflict in evidence, and no incompetent and improper evidence should have been permitted to be placed in the balance against the defendant.

We consider it unnecessary to pass upon the other errors assigned. Suffice it to say that it is our opinion that the defendant did not have that fair and impartial trial to which he was entitled. The judgment is therefore reversed.

ARMSTRONG, P. J., concurs; FURMAN, J., absent and not participating.